**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL and GOBEIL, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 14, 2018**

# In the Court of Appeals of Georgia

A18A1218. EMMA KATHERINE BERGSTROM v. THE STATE

BETHEL, Judge.

Emma Katherine Bergstrom was convicted of DUI under 21 and DUI less safe. She appeals from her convictions, arguing that Georgia's implied consent statute is unconstitutional on its face and as applied to her. Specifically, Bergstrom argues the State failed to prove she voluntarily consented to the state-administered breath test, and the trial court erred in denying her motion to suppress the results of the test. Finding no error, we affirm.

> On appeal from a ruling on a motion to suppress, we defer to the trial court's factual findings and credibility determinations, but review de novo the court's application of the law to the undisputed facts. And significantly, to the extent that the controlling facts are undisputed because they are plainly discernable from the patrol car-mounted

video recording as they are in this case, we review those facts de novo. Although we owe substantial deference to the way in which the trial court resolved disputed questions of material fact, we owe no deference at all to the trial court with respect to questions of law, and instead, we must apply the law ourselves to the material facts. This includes legal determinations based upon the totality of the circumstances.

*Yeong Sik Oh v. State*, 345 Ga. App. 729, 729-730 (815 SE2d 95) (2018) (citation omitted).

So viewed, the evidence shows that on September 26, 2015, Emma Katherine Bergstrom, then 17 years old, was stopped by a police officer at a roadblock. During the stop, the officer observed that Bergstrom smelled strongly of alcohol, and that her eyes were bloodshot and glossy. Bergstrom agreed to take a police administered preliminary breath test (PBT). After the PBT indicated a positive presence of alcohol, the officer explained the PBT results to Bergstrom, and she admitted to consuming alcohol a few hours before the stop. The officer arrested Bergstrom and immediately read her Georgia's implied consent notice for DUI suspects under 21 years of age, which provides as follows:

Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs. If you refuse this testing, your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year. Your refusal to submit to the required testing may be offered into evidence against you at trial. If you submit to testing and the results indicate an alcohol concentration of 0.02 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year. After first submitting to the required state tests, you are entitled to additional chemical tests of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit to the state administered chemical tests of your breath under the implied consent law?

OCGA § 40-5-67.1 (b)(1). Bergstrom then agreed to the state-administered breath test, stating, "yeah, I'll do whatever you want me to do." Then, using Bergstrom's cell phone, the officer attempted to contact Bergstrom's mother to pick up Bergstrom's automobile so that it would not be impounded. Bergstrom then became highly upset, saying, "my mom's going to hate me forever" and "oh my God, I'm such an idiot. I hate myself. I'm going to kill myself." While the officer was making the phone call, Bergstrom again stated "I'm going to kill myself," and

repeatedly verbalized how this situation would impact her college prospects. After the officer was unable to contact Bergstrom's mother and father, Bergstrom was searched and transported to the police station where the state-administered test was conducted. The test revealed that Bergstrom was over the legal limit, with a blood alcohol content of .115. Subsequently, Bergstrom was charged with DUI under 21 and DUI less safe.

Before her trial, Bergstrom filed a motion to suppress the results of the state-administered breath test, arguing that she did not voluntarily consent to the breath test and that Georgia's implied consent statute is unconstitutional on its face and as applied to her. The trial court denied her motion, concluding that based on the totality of the circumstances, Bergstrom voluntarily consented to the state-administered breath test, and that Georgia's implied consent notice was constitutional. At a stipulated bench trial, the trial court found Bergstrom guilty of DUI under 21 and DUI less safe. This appeal followed.

Bergstrom argues that the trial court erred by failing to find Georgia's implied consent statute unconstitutionally coercive on its face and as applied to her. In light of our Supreme Court's holding in *Olevik v. State*, this argument fails. 302 Ga. 228 (806 SE2d 505) (2017).

In *Olevik*, the defendant appealed from a conviction of DUI less safe, arguing the trial court erred in denying his motion to suppress the results of a state-administered breath test. 302 Ga. at 231. Like Bergstrom, the defendant argued that Georgia's implied consent statute was unconstitutional on its face and as applied to him. *Id*. at 229. The defendant contended the language of the statute was misleading in such a way that it compelled him to take the state-administered breath test, violating both his due process rights and his rights under the Georgia Constitution. *Id*. at 229. While our Supreme Court agreed that the defendant's rights under the Georgia Constitution were implicated when he submitted to the breath test, the Court rejected the defendant's facial challenge, finding that the implied consent notice is not per se coercive on its face. *Id.* at 247 (3) (a). The Court reasoned that the implied consent statute has a plainly legitimate sweep in that it does not impose criminal penalties for refusing to submit to chemical testing, and thus the statute is not unconstitutional in all of its applications. *Id*. at 246-48 (3). *Compare Birchfield v. North Dakota*, 136 SCt 2160, 2184-2185 (V) (C) (3), (195 LEd2d 560) (2016) (where the U.S. Supreme Court approved the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to

5

comply, but struck down implied consent laws that impose criminal penalties for refusing to submit to blood testing).

a. *Facial Challenge*

Here, as in *Olevik*, Bergstrom contends that Georgia's implied consent statute is unconstitutional on its face, arguing that the warning statement required by the statute is patently false and misleading. However, just as the defendant in *Olevik*, Bergstrom has failed to demonstrate that the implied consent notice is unconstitutional in all of its applications. 302 Ga. at 248 (3) (a) (i). *See also United States v. Salerno*, 481 U. S. 739, 745 (107 SCt 2095, 95 LEd2d 697) (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.").

Moreover, we are unpersuaded by Bergstrom's contention that the language of the warning is fundamentally inaccurate with respect to the voluntariness of the search or fails to fully explain the consequences of non-compliance, and thus violates her due process rights. There is no law requiring a full and explicit explanation of all possible consequences of refusal in this context. Although, as our Supreme Court noted, there may be deficiencies in the implied consent notice, "there is no evidence

6

that OCGA § 40-5-67.1 (b) creates widespread confusion about drivers' rights and the consequences for refusing to submit to a chemical test or for taking and failing that test." *Olevik*, 302 Ga. at 250 (3) (a) (i). Thus, Bergstrom's facial challenge fails.

b. *As Applied Challenge*

Next, Bergstrom contends that OCGA § 40-5-67.1 (b) is unconstitutional as applied to her and challenges, in essence, the voluntariness of her consent to the undergo the state-administered test.[1] Because the voluntariness of consent to a breath test is determined by looking to the totality of the circumstances, we review the relevant factors considered by the trial court in concluding that Bergstrom consented to the breath test under Fourth Amendment principles.

Georgia courts have said that the voluntariness of a consent to search is determined by such factors as

> the age of the accused, [her] education, [her] intelligence, the length of
> detention, whether the accused was advised of [her] constitutional

---

[1] Similar to our Supreme Court's analysis in *Olevik*, Bergstrom's "as applied" claim is not a challenge to the statute, but rather a challenge to the admission of the results of the breath test against her. *See Olevik*, 302 Ga. 250-251 (3) (b) ("Regardless of whether the reading of a notice compels a defendant to incriminate himself, it is not the reading of the notice that would constitute a due process violation or a violation of the right against compelled self-incrimination. Instead, it is the admission of a compelled breath test that would amount to a constitutional violation.").

7

rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of all these factors on the accused. In determining voluntariness, no single factor is controlling.

*Dean v. State*, 250 Ga. 77, 80 (2) (a) (295 SE2d 306) (1982) (citing *Schneckloth v. Bustamonte*, 412 U. S. 218, 227 (93 SCt 2041, 36 LE2d 854) (1973)).

Here, the record reflects that the trial court considered these factors in concluding that Bergstrom voluntarily consented to the state-administered breath test. *See Kendrick v. State*, 335 Ga. App. 766, 769 (782 SE2d 842) (2016) ("A consent to search will normally be held voluntary if the totality of the circumstances fails to show that the officers used fear, intimidation, threat of physical punishment, or lengthy detention to obtain the consent." (citation omitted)). The trial court reviewed each of the aforementioned factors in open court, even acknowledging that Bergstrom's age "worked in her favor" in its order denying Bergstrom's motion to suppress. The record further demonstrates that the trial court reviewed the actions of the arresting officer and found that the arresting officer acted "in a professional and non-coercive manner throughout his interactions with [Bergstrom]."

While it is undisputed that Bergstrom was upset throughout the encounter, the record, including a video recording of Bergstrom's encounter with the arresting

8

officer, sufficiently demonstrates that she consented to the state-administered breath test. As the trial court said, "it cannot be the law that every time a 17 year old is read implied consent that implied consent is, per se, not understood and coercive[.]" Accordingly, Bergstrom's as applied challenge must also fail.

Because the trial court's conclusion that Bergstrom voluntarily consented the breath test, having properly considered all relevant factors, and because the language of the implied consent statute is not coercive per se, Bergstrom's facial and as applied challenges to the statute fail. Accordingly, we affirm the trial court's order denying Bergstrom's motion to suppress and affirm her conviction.

*Judgment affirmed. Ellington, P. J., and Gobeil, J., concur*.